Leonard T. Strand, Chief Judge
I. INTRODUCTION
This case is before me on the following motions by plaintiffs: (1) a motion (Doc.
*559 No. 207) to amend, in part, my order (Doc. No. 204) granting defendant's motions for partial summary judgment and decertification of the hostile work environment class; (2) a motion (Doc. No. 209) to stay, or, in the alternative, amend the scheduling order; and (3) a motion (Doc. No. 211) to certify final judgment upon the class retaliation claim for appeal pursuant to Federal Rule of Civil Procedure 54(b). Defendant CRST Expedited, Inc. (CRST) has filed resistances (Doc. Nos. 213, 223, 226) and plaintiffs have filed replies (Doc. Nos. 222, 227, 228). Plaintiffs have also submitted supplemental authority. See Doc. Nos. 231, 232.
II. BACKGROUND
On March 30, 2017, I entered an order certifying a hostile work environment class and a retaliation class. See Doc. No. 85. Pursuant to Federal Rule of Civil Procedure 23(c)(4)(A), I also certified the following issues with respect to each class pursuant to Federal Rule of Civil Procedure 23(c)(4)(a) :
a. As to the Hostile Work Environment Class, whether CRST has any of the following policies, patterns or practices that create or contribute to a hostile work environment:
(1) failing to find their complaints were corroborated without an eyewitness or admission,
(2) failing to discipline drivers after complaints were corroborated and
(3) failure to discipline DMs for failing to promptly respond to sexual harassment complaints and
b. As to the Retaliation Class:
(1) Whether CRST has a policy, pattern or practice of retaliating against women complaining of sexual harassment by requiring them to exit the truck except when they are a lead driver or owner-operator.
Id. at 55. I noted that pursuant to Rule 23(c)(1)(C), the order could be altered or amended before final judgment. Id. at 56.
CRST subsequently moved for summary judgment on the retaliation claim and decertification of the hostile work environment class. See Doc. Nos. 171, 172. I granted both motions on January 15, 2019. See Doc. No. 204. In my order, I explained that as to the hostile work environment class, I had previously relied on a bifurcated approach under the framework established in Int'l B'hood of Teamsters v. United States , 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). See Doc. No. 204 at 57. That framework contemplated using the class structure in Phase I to determine whether CRST created or tolerated a hostile work environment by way of the three stated policies while leaving damages to be determined individually in Phase II. Id. Within Phase I, I had also certified the issue of whether CRST had any of the alleged policies, patterns or practices. Upon closer examination of the liability determination in Phase I, I explained that there were predominance issues as to liability concerning whether plaintiffs could prove each element of a hostile work environment claim using common evidence. Id. at 57-68. In my order certifying the hostile work environment class, I had focused on plaintiffs' argument that common evidence could be used to prove the employer's alleged negligence to unwelcome sexual harassment through the three alleged policies, patterns or practices. Id. In considering CRST's motion for decertification, I took a closer look at each of the elements plaintiffs would have to prove at Phase I to establish liability, and found plaintiffs had not established that the remaining elements (particularly the alleged unwelcome sexual harassment that plaintiffs experienced) were not amenable to class resolution.
*560 Id. I also determined that at Phase II, the alleged harassing conduct would have to be evaluated again (regarding whether it was objectively and subjectively offensive). Id. Ultimately, I concluded the hostile work environment class and certified issue did not meet the predominance and superiority requirements under Rule 23(b)(3), nor the commonality requirement under Rule 23(a). Id.
With regard to the retaliation class, I granted summary judgment finding that plaintiffs failed to put forth any evidence from which a jury could find pretext as to CRST's alleged policy, pattern or practice of requiring sexual harassment complainants to exit the truck without pay. See Doc. No. 204 at 41 ("Plaintiffs have not put forth sufficient evidence for a jury to infer that (a) CRST's articulated reasons were false and (b) the real reason was retaliation.").
Plaintiffs now request that I:
• Amend my order by recertifying the Rule 23(c)(4) issue class as to plaintiffs' hostile work environment claim and certifying a separate Rule 23(c)(4) class as to CRST's alleged negligence with respect to its alleged policies. See Doc. No. 207-1 at 1.
• Stay the Second Amended Scheduling Order pending resolution of appellate proceedings and plaintiffs' pending motion for partial amendment, or reset the dispositive motion and trial ready dates following a decision on plaintiffs' Rule 23(f) petition[1] as well as following a decision on plaintiffs' motion (Doc. No. 207) to certify an issues class. See Doc. No. 209-1.[2]
• Certify their class retaliation claims for appeal pursuant to Federal Rule of Civil Procedure 54(b). See Doc. No. 211-1 at 1.
I will first address whether plaintiffs' class retaliation claims should be certified for appeal and will then address their motion to amend my prior order. In the event my ruling on either issue requires further amendment of the scheduling order, I will address that issue at the end of this order.
III. ANALYSIS
A. Motion to Certify Class Retaliation Claim for Appeal Pursuant to Rule 54(b)
Plaintiffs argue I should certify their class retaliation claim as a final judgment for appeal because there is a danger of severe hardship or injustice if the appeal is delayed to the conclusion of the named plaintiffs' individual claims. They contend that the individual claims cannot yield any relief that would make it unnecessary to appeal the class retaliation claim because if the retaliation class was successful on appeal and at trial, it would be entitled to an injunction against ongoing retaliation, which may not be as broad at the individual level. Doc. No. 211-1 at 4,7. Plaintiffs also argue that there is a severe danger of hardship or injustice if the class retaliation claim is not certified for final judgment because former retaliation class members are currently forced to decide whether to pursue individual actions to protect any retaliation claim they may have. Id. at 6. This risks great time and expense that could be avoided by a certification of the *561 retaliation class claim as a final judgment. Id.
CRST argues that plaintiffs' individual retaliation claims are at issue in CRST's pending motion for summary judgment[3] and that certification of final judgment as to the class retaliation claim would create a significant risk that the Eighth Circuit would have to revisit the same factual and legal issues on multiple occasions. See Doc. No. 226 at 5. CRST contends that Rule 54(b) certification is an "exceptional" order and, in this instance, would promote the convenience of class members over "efficiency at the appellate level," which is the main concern. Id. at 6 (quoting Ward v. Von Maur, Inc. , No. 3:04-CV-00159, 2008 WL 11336226, at *3 (S.D. Iowa Oct. 1, 2008) ). CRST emphasizes that the relief sought should not be the focus on whether to certify a claim for final judgment. Rather, I should determine whether the adjudicated and unadjudicated claims are "factually and legally similar." Doc. No. 226 at 8 (quoting McCullough v. Aegon USA, Inc. , No. 06-CV-0068LRR, 2008 WL 268895, at *7 (N.D. Iowa Jan. 29, 2008) ).
With regard to plaintiffs' concern that they are currently in the difficult position of having to choose whether or not to proceed with their individual claims, CRST contends that because I granted summary judgment on the class retaliation claim and did not decertify the class, any cognizable individual claims are currently tolled. Id. at 10. Even if this was not the case, CRST argues that given the time it would take to resolve the class retaliation claim on appeal, former class members would need to pursue individual claims anyway given the short limitations periods that govern Title VII retaliation claims. Id. at 11. In other words, an appeal of the class retaliation claim would not relieve the alleged hardship or injustice of having to decide whether to move forward with an individual claim. Moreover, given the small number of named individuals (three) and relatively small number of other potential individual claims, CRST argues that the immediate appeal of the class retaliation claim is unnecessary to relieve any hardship on the court. Id. at 12-13.
In reply, plaintiffs represent that if the individual claims are unsuccessful, an onslaught of appeals of the individual cases is unlikely given that appellate counsel would be compensated only pursuant to fee shifting statutes, if successful, and that "plaintiffs' success rate on appeals in employment discrimination matters is, as a matter of public record, poor." Doc. No. 228 at 2. They also point out that Rule 54(b)'s purpose is to "avoid the possible injustice of a delay in judgment of a distinctly separate claim to await adjudication of the entire case." Id. at 3 (citing Committee Notes (1946) to Fed. R. Civ. P. 54(b) ). Plaintiffs argue that efficiency at the appellate level is the purpose of the rule against interlocutory appeals and that Rule 54(b) is an exception to that rule. Id. at 4. They argue that appeal of the class retaliation claim will relieve a burden on the litigants, the court and the Eighth Circuit. Id. at 4.
Federal Rule of Civil Procedure 54(b) provides in relevant part:
When an action presents more than one claim for relief - whether as a claim, counterclaim, crossclaim, or third-party claim - or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.
*562 Fed. R. Civ. P. 54(b). The Eighth Circuit has instructed that district courts must undertake a two-step analysis when deciding whether to certify an order under Rule 54(b). The court "must first determine that it is dealing with a final judgment ... in the sense that it is an ultimate disposition of an individual claim." Downing v. Riceland Foods, Inc. , 810 F.3d 580, 585 (8th Cir. 2016) (quoting Williams v. County of Dakota , 687 F.3d 1064, 1067 (8th Cir. 2012) ). "Second, the district court must determine whether a just reason for delay exists." Id. In making such a determination, a district court "must consider both the equities of the situation and judicial administrative interests, particularly the interest in preventing piecemeal appeals." Id. "Certification should be granted only if there exists 'some danger of hardship or injustice through delay which would be alleviated by immediate appeal." Hayden v. McDonald , 719 F.2d 266, 268 (8th Cir. 1983) (per curiam). Factors to consider are:
(1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in setoff against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.
Hayden , 719 F.2d at 269.
There is no question that my order (Doc. No. 204) is final as to the class retaliation claim. With regard to the individual claims, CRST has filed a motion (Doc. No. 216) for summary judgment. Plaintiffs' response is not yet due. In deciding whether to grant summary judgment on plaintiffs' class retaliation claim, I found that plaintiffs failed to demonstrate a genuine issue of material fact as to pretext. See Doc. No. 204 at 41 ("Plaintiffs have not put forth sufficient evidence for a jury to infer that (a) CRST's articulated reasons were false and (b) the real reason was retaliation."). The alleged adverse employment action was removing the complainant of sexual harassment from the truck resulting in no pay until the complainant could be re-paired. Id.
While I granted summary judgment on the class claim of retaliation, I noted that this did "not preclude the possibility that an individual plaintiff might have a viable retaliation claim based on the specific facts and circumstances of that plaintiff's case." Id. at 69. For instance, other facts and circumstances specific to individual plaintiffs might suggest a retaliatory motive or that application of the policy was pretext. Plaintiffs acknowledge that "[i]ndividual retaliation claims therefore could not be based solely upon the policy that was the subject of the class claim ...." Doc. No. 211-1 at 4. There are only three individual plaintiffs in this lawsuit and the current trial ready deadline is August 13, 2019.
Examining the applicable factors, I find that the relationship between the adjudicated class claim and unadjudicated individual claims is relatively strong. While plaintiffs' individual claims must be based on some facts and circumstances in addition to the alleged policy, the claims involve overlapping facts and legal issues because plaintiffs were attempting to use the named plaintiffs' experiences as "typical" of the class. See McAdams v. McCord , 533 F.3d 924, 928 (8th Cir. 2008) ("Judicial economy will be best preserved by delaying appeal until all issues can be confronted by this court in a unified package. Such *563 a course is particularly desirable where ... the adjudicated and pending claims are closely related and stem from essentially the same factual allegations."). This factor weighs against certifying the class claim for appeal.
With regard to whether the need for review will be mooted by future developments in the district court, this seems unlikely. Plaintiffs have emphasized that the main purpose of this lawsuit was to seek broad relief through an injunction against CRST policies that would apply to all complainants of sexual harassment at CRST. Such broad relief is unlikely at the individual level if the individual plaintiffs are successful. This factor weights in favor of certifying the class claim for appeal.
Third, I must consider the possibility that the Eighth Circuit will be obliged to consider the same issue a second time. As noted above, there is significant overlap between the factual and legal issues in the class retaliation claim and individual retaliation claims. If the individual claims are not successful, it seems very likely that the Eighth Circuit would have to consider whether the policy is retaliatory or pretext a second time, even though plaintiffs suggest they may not have an interest in appealing. This factor weighs against certifying the class claim for appeal.
The fourth factor - the presence or absence of a claim or counterclaim that could result in setoff against the judgment sought to be made final - does not appear to apply to this case or at least have any bearing as to whether the class retaliation claim should be certified for appeal. The judgment sought to be made final is the dismissal of a class retaliation claim. If that dismissal is overturned on appeal, it would simply come back to this court for trial. This factor is neutral.
With regard to the fifth factor, I note that the "danger of hardship or injustice through delay which would be alleviated by immediate appeal" is not great. Huggins v. FedEx Ground Package Sys., Inc. , 566 F.3d 771, 774 (8th Cir. 2009). Plaintiffs' individual claims are expected to resolved - whether by summary judgment or by trial - in a relatively short amount of time. Moreover, given the prospect that there will, at least, be some overlapping factual and legal issues if both the class claim and individual claims are appealed, I find it prudent to have these issues presented to the Court of Appeals at once, rather than in two separate appeals. See Huggins , 566 F.3d at 775 (noting that delay in certification "is particularly desirable where adjudicated and pending claims are closely related and stem from essentially the same factual allegations."); Outdoor Cent., Inc. v. GreatLodge.com, Inc. , 643 F.3d 1115, 1119 (8th Cir. 2011) ("[w]here each claim requires familiarity with the same nucleus of facts and involves analysis of similar legal issues, the claims should be resolved in a single appeal.") (internal quotations omitted) ). This factor weighs against certifying the class claim for appeal.
In weighing all of the relevant factors, I find that the dismissal of the class retaliation claim should not be certified as a final judgment for appeal under Rule 54(b). Plaintiffs' motion to certify will be denied.
B. Motion to Amend
Plaintiffs argue I should recertify the Rule 23(c)(4) issues class regarding the alleged existence of CRST's policies contributing to a hostile work environment and should separately certify a Rule 23(c)(4) class as to CRST's alleged negligence with respect to the alleged policies. Plaintiffs argue that the predominance requirement is met because predominance need not apply to the claim as a whole, but need only apply to issues under *564 Rule 23(c)(4). They contend the law supports a Rule 23(c)(4) certification and that such certification would promote efficiency and justice. See Doc. No. 207-1.
CRST characterizes plaintiffs' motion as a motion for reconsideration and argues that plaintiffs do not meet the standard of review for reconsideration. In any event, CRST argues there is no reason to revisit the issue of whether the issue class should be recertified or any other issue class certified because the predominance and superiority requirements under Rule 23(b)(3) are not satisfied. Moreover, CRST argues that the time to certify a new class has passed and notes that plaintiffs never requested certification of a "negligence" class in the past. See Doc. No. 213.
Plaintiffs urge me to consider their motion under Rule 23(c)(1)(C), while CRST argues it is essentially a motion to reconsider. Both parties provide competing authority as to whether Rule 23(c)(1)(C) may be utilized for the purpose of "amending" or "reconsidering" an order related to class certification. Because Rule 23(c)(1)(C) gives the court broad authority, I will consider plaintiffs' motion pursuant to that rule. See also Andersen v. Wells Fargo Fin., Inc. , No. 4:11-cv-0085, 2012 WL 12871957, at *2-3 (S.D. Iowa Mar. 29, 2012) (reasoning that on a motion to amend an order concerning class certification, a court may look to whether it "(1) misunderstood a party, (2) made a decision outside of the adversarial issues, or (3) would be rendered incorrect because of a controlling or significant change in the law since the issues were submitted to the Court.").
Rule 23(c)(4) provides: "When appropriate, an action may be brought or maintained as a class action with respect to particular issues." The Eighth Circuit has recognized that "there is a conflict in authority on whether [an issue] may be certified under Rule 23." In re St. Jude Medical, Inc. , 522 F.3d 836, 841 (8th Cir. 2008). The court did not decide the issue, but stated that "[e]ven courts that have approved 'issue certification' have declined to certify such classes when the predominance of individual issues is such that limited class certification would do little to increase the efficiency of the litigation." Id. Following this guidance, I chose to decide this issue based primarily on whether issues should be certified, not whether they could be certified. While I appreciate plaintiffs' counsel's zealous advocacy in providing authority as to why issues classes could be certified, I have already determined that they should not be certified under the circumstances of this case.
Plaintiffs focused their motion for class certification on demonstrating that CRST created, tolerated or maintained a hostile work environment based on three alleged policies, patterns or practices. The first alleged policy, pattern or practice was that CRST refused to find corroboration of harassment complaints absent an eyewitness or admission. Doc. No. 85 at 31. Plaintiffs relied on testimony from CRST's Rule 30(b)(6) witness, Karen Carlson, in support. Id. I stated:
Carlson's testimony provides some evidence that CRST maintains a policy or practice with regard to "he said/she said" complaints by requiring either an eyewitness statement or an admission to find that the complaint was legitimate. Whether this amounts to discrimination that creates a hostile work environment or has a legitimate non-discriminatory purpose is an issue still in play. For purposes of commonality under Rule 23(a)(2), plaintiffs have produced sufficient evidence. Not only have they presented Carlson's testimony, but they have also submitted declarations stating CRST refused to consider other potentially corroborating evidence, such as *565 recordings. While Carlson disputes plaintiffs' statements that she refused to listen to recordings, this is an issue for trial.
Id. at 31-32. I similarly concluded that plaintiffs satisfied the commonality requirement with regard to the remaining two policies, patterns or practices, noting that it was not necessary at the time to resolve the question of whether CRST does or does not maintain the alleged pattern or practice. Id. at 33-35. Rather, I focused on whether, under Rule 11 23(a)(2), plaintiffs could show that there were question of law or fact common to the class. Id.
After analyzing the Rule 23(a) factors, I considered whether a class could be certified under Rule 23(b)(3) or as a hybrid action under Rules 23(b)(2) and (b)(3). Id. at 42. Rule 23(b)(3) requires a finding "that the question of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Powers v. Credit Mgmt. Servs. , 776 F.3d 567, 569 (8th Cir. 2015). Based on the proposed bifurcated Teamsters approach, I concluded that common issues would predominate over individual ones with regard to liability only. Doc. No. 85 at 43-48. I also concluded the superiority requirement was met under Rule 23(b)(3) because the hostile work environment class would be "limited to the issue of whether CRST created or maintained an objectively hostile work environment based on the three alleged pattern or practices." Id. at 48.
I later went on to consider whether to certify particular issues under Rule 23(c)(4). Id. at 50-52. In doing so, I acknowledged authority stating that a class could be certified as to issues regardless of whether the claim as a whole satisfied the predominance test. Id. at 51 (citing In re Nassau Cnty. Strip Search Cases , 461 F.3d 219, 221 (2d Cir. 2006) ). I specifically noted that the Ninth and Fourth Circuits approved of the approach, while the Fifth Circuit did not and the Eighth Circuit had not yet decided the issue. Id. at 51-52. With regard to the hostile work environment class, I certified the issue of whether CRST had any of the three alleged policies, patterns or practices that create or contribute to a hostile work environment. Id. at 55. I also noted that the order could be altered or amended as appropriate before final judgment pursuant to Rule 23(c)(1)(C).
Upon CRST's motion for decertification of the hostile work environment class, I took a closer look at the elements of plaintiffs' hostile work environment claim considering where the alleged policies, patterns or practices that created or contributed to a hostile work environment would fit in the analysis and whether the claim was best suited to be tried as a class. Those elements are: (1) plaintiffs are members of a protected group, (2) they were subjected to unwelcome sexual harassment, (3) the harassment was based on sex, (4) the harassment affected a term, condition or privilege of her employment and (5) their employer knew or should have known of the harassment and failed to take appropriate remedial action. Nichols v. Tri-National Logistics, Inc. , 809 F.3d 981, 985 (8th Cir. 2016). "Actionable harassment must have been both objectively and subjectively offensive affecting a term of employment." Id. (citing Bainbridge v. Loffredo Gardens, Inc. , 378 F.3d 756, 759 (8th Cir. 2004). In examining these elements, along with plaintiffs' allegations, I concluded that: (1) the alleged unwelcome conduct was not subject to classwide resolution and (2) that such conduct would have to be evaluated as being *566 objectively and subjectively offensive at both Phase I and Phase II. See Doc. No. 204 at 57-68. These findings made me less confident that trying plaintiffs' hostile work environment claim as a class would result in certain efficiencies.
Even if the limited issue of whether CRST maintained any of the alleged policies, patterns or practices could be resolved on a class basis, it would still be necessary for each individual plaintiff to establish (1) that she was exposed to harassment, (2) that the harassment violated Title VII (i.e., was objectively and subjectively offensive) and (3) damages. Resolving the issue of whether CRST maintained any of the alleged policies, patterns or practices[4] would not necessarily establish liability, which requires "that an individual claimant was exposed to harassment [and] that the harassment an individual claimant suffered violates Title VII." E.E.O.C. v. Int'l Profit Assocs. , No. 01 C 4427, 2007 WL 3120069, at *3 (N.D. Ill. Oct. 23, 2007). "It is thus unclear what effect a pattern or practice finding should have on an individual claimant's suit for damages." Id.
I relied heavily on this rationale in decertifying the hostile work environment class and certified issue. Essentially, the certified issue was only a small part of the liability analysis and did not work to advance the litigation in the way I had previously anticipated given that so many elements (besides damages) would have to be resolved on an individual level. While I appreciate that predominance may not be required to apply to the claim as a whole, but only the issue class under Rule 23(c)(4), the practicalities of trying a claim in such a way seem inefficient.
I also concluded that neither the hostile work environment class nor the certified issue met the commonality requirement. Plaintiffs do not challenge the idea that the issue class itself must meet the commonality requirement of Rule 23(a). The application of the commonality standards looked much different under this new lens of what exactly plaintiffs needed to prove for their hostile work environment claim. For instance, commonality requires a showing that class members "have suffered the same injury," see Powers v. Credit Mgmt. Servs. , 776 F.3d 567, 571 (8th Cir. 2015) and that a "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc. , 821 F.3d 992, 998 (8th Cir. 2016).
Commonality is tested in the issue class proposed here based, in part, on the differences in the "unwelcome sexual harassment" that will be required to be proved individually because it is difficult to determine whether a policy, pattern or practice contributes to a hostile work environment *567 or is a negligent response when it is not being measured against a common problem. When analyzing commonality in the first instance on plaintiffs' motion for class certification, I was focused on whether the alleged policies, patterns or practices were common to each plaintiff or consistently applied by CRST regardless of individual circumstances. For instance, in the rehabilitation class, I found that plaintiffs were not all subjected to the alleged policy of failing to reimburse lodging and transit costs. I recognized that within the certified classes, the issue would also have to be resolved of whether CRST even had any of the alleged policies, patterns or practices. I did not evaluate, at that time, whether the "issues class" itself met the commonality and other requirements.
As discussed above, it became clear in deciding CRST's motion for decertification that plaintiffs' proposed hostile work environment claim was not susceptible to the Teamsters two-phase approach, as initially thought, because the class lacked commonality as to the alleged unwelcome conduct upon which CRST's actions could be judged. As CRST puts it:
[T]here simply is no way to determine whether CRST had a 'policy' of 'failing to discipline drivers after their complaints were corroborated' without knowing the circumstances of each individual complaint and evaluating in each individual case whether discipline was warranted. Likewise there is no way to determine whether CRST had a 'policy' of 'failure to discipline DMs for failing to promptly respond to sexual harassment complaints' without evaluating each individual circumstance to determine how 'prompt' the response was and whether discipline was warranted. And there is no way to know whether CRST had a 'policy' of 'failing to find complaints corroborated without an eyewitness or admission' without knowing the individual circumstances of the complaint and the presence or absence of eyewitnesses or admissions.
Doc. No. 213 at 9. The commonality I previously analyzed does not necessarily matter under this new framework because establishing the existence of any of the three alleged policies does not necessarily further the legal analysis. Indeed, it could be a reasonable response to some situations and a negligent response in others. See Wal-Mart Stores, Inc. v. Dukes , 564 U.S. 338, 350, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011) ("That common contention, moreover, must be of such a nature that it is capable of classwide resolution - which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."). Its common application without regard to the underlying circumstance is meaningless.
Moreover, given that the conduct must be analyzed on an individual level, it would make sense for plaintiffs to want to introduce all aspects of the employer's response beyond the response that was common to every individual who had experienced differing levels of unwelcome sexual harassment. The reasonableness of the employer's response cannot be measured against varying circumstances. It must be measured against circumstances that obligate it to respond when those circumstances differ. In other words, it would be unfair to reach a holistic conclusion about whether such a policy, pattern or practice creates or contributes to a hostile work environment. The previously-certified issue class is too intertwined with the individual issues to make issue certification a worthwhile tool in resolving this dispute. See Grovatt v. St. Jude Med., Inc. (In re St. Jude Med., Inc.) , 522 F.3d 836, 841 (8th Cir. 2008) ("Even courts that have approved *568 'issue certification' have declined to certify such classes where the predominance of individual issues is such that limited class certification would do little to increase the efficiency of the litigation.").
With regard to plaintiffs' request to certify a separate issue class related to negligence, this request is untimely and, in any event, would be susceptible to the same commonality and predominance issues discussed above. For these reasons, I decline to amend the order (Doc. No. 204) to re-certify the issue class or to certify a separate negligence issue class under Rule 23(c)(4).
C. Motion to Stay
As noted above, plaintiffs' Rule 23(f) petition has been denied and the mandate issued. See Doc. Nos. 229, 230. I have also determined that the class retaliation claim should not be certified for appeal pursuant to Rule 54(b). Because there is no pending appeal or matter certified for appeal, the motion to stay or amend the second amended scheduling order will be denied.
IV. CONCLUSION
For the reasons stated herein:
1. Plaintiffs' motion (Doc. No. 207) to amend the decertification order is denied.
2. Plaintiffs' motion (Doc. No. 209) to stay, or alternatively amend, the trial scheduling order is denied .
3. Plaintiffs' motion (Doc. No. 211) to certify final judgment upon the class retaliation claims for appeal pursuant to Federal Rule of Civil Procedure 54(b) is denied .
IT IS SO ORDERED.

This petition has been denied. See Doc. No. 229.

Plaintiffs' motion (Doc. No. 209) to stay is somewhat moot given that the Eighth Circuit Court of Appeals has denied their Rule 23(f) motion. The trial ready deadline has already been extended to August 13, 2019. Doc. No. 225.

CRST filed a motion (Doc. No. 216) for summary judgment on February 14, 2019, on plaintiffs' individual claims of both retaliation and hostile work environment.

My initial phrasing of the issue as "whether CRST has any of the following policies, patterns or practices that create or contribute to a hostile work environment" was imprecise. This issue actually poses two questions: (1) whether CRST has any of the following policies, patterns or practices and if so, (2) whether they create or contribute to a hostile work environment. Nonetheless, these questions have limited value in advancing the litigation as neither can result in a finding of liability without consideration of individual circumstances. See E.E.O.C. v. Int'l Profit Assocs. , No. 01 C 4427, 2007 WL 3120069, at *14 (N.D. Ill. Oct. 23, 2007) ("That an employer has such a general policy does not mean that every employee who was harassed has been exposed to harassment meeting the Meritor threshold, and thus does not mean that the terms and conditions of employment have been altered for each employee who experienced harassment. It is entirely possible for an employee to work at a business with a policy of tolerating actionable sexual harassment, yet be exposed to harassment in only the most superficial of ways.").